**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Eitan Maximov,<br><br>Defendant. | No. CR10-822-PHX-DGC<br><br>**ORDER** |

The government has filed a motion to in limine to preclude evidence or argument regarding the fault of the financial institutions in this case. Doc. 55. The motion has been fully briefed. Docs. 62, 125, 131. The Court discussed the motion with the parties at a hearing on October 12, 2011. For the reasons that follow, the motion will be granted in part and denied in part.

**I.      Background.**

Defendant Eitan Maximov is charged with conspiracy to commit wire fraud and bank fraud and two counts of wire fraud. The government alleges that Defendant perpetrated a scheme to obtain mortgage loans through various lenders by the use of straw buyers, false statements on loan applications, and transactions that produced cash payments to Defendant without the knowledge of the lenders. Doc. 1. Among other things, the government alleges that Defendant provided the lenders with false information concerning the identities of the borrowers, their income, their assets, and the sources of their down payments.

The government asks the Court to preclude Defendant from presenting evidence concerning the lending practices of the victim lenders in this case. Defendant has noted that at least some of the lenders engaged in loose loan practices, lending money to high-risk, unqualified borrowers in order to generate fees. Defendant seeks to present these practices to the jury through cross-examination of the government's witnesses and, possibly, through direct evidence.

**II.  Analysis.**

Because Defendant is charged with two counts of wire fraud and with conspiracy to commit wire fraud and bank fraud, the Court must focus on the elements of proof for wire fraud and bank fraud. Several principles are relevant to the decision of this motion.

First, to obtain a conviction for wire fraud or bank fraud, the government must prove that the false statements allegedly made by Defendant were material. The Supreme Court has expressly held "that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder v. United States,* 527 U.S. 1, 25 (1999).

Second, the definition of materiality has been established by the Supreme Court: "A false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Neder*, 527 U.S. at 16 (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)) (brackets in original).

Third, materiality is an objective test. As the Ninth Circuit has explained, "'capable of influencing' is an objective test, which looks at 'the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end.'" *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (quoting *United States v. Facchini*, 832 F.2d 1159, 1162 (9th Cir. 1987)).

Fourth, wire fraud and bank fraud do not require proof that the victim relied on the false statements or was damaged by the statements. "The common-law requirements of

'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes. By prohibiting the 'scheme to defraud,' rather than the completed fraud, the elements of reliance and damages would clearly be inconsistent with the statutes Congress enacted." *Neder*, 527 U.S. at 24-25 (citations omitted).

Fifth, because reliance and damages are not necessary elements of the crime, it is no defense to wire fraud or bank fraud that the victim of the fraud was negligent, gullible, or incompetent. *See, e.g.*, *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) (mail fraud) ("[A] misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose." (citation omitted)); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) (bank fraud) ("The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis: 'If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemer intended to defraud was gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts.'" (citation omitted)); *United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995) (mail fraud) ("To the extent that Coyle is arguing that the Fund was negligent in ignoring Johns' advice and in failing to review the Schedules A, we reject the relevance of those allegations, even if true. The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999) (bank fraud) ("Reliance is not an element of proving a § 1344 violation. . . . Evidence that the bank would not have relied on Mr. Reynolds' representation, and instead would have made an exception for him, does not establish that the representations were immaterial; that is, the representations would not have a tendency to influence the bank's decision-making. No error was committed [in excluding evidence of non-reliance]."); *see also United States v. Thomas*, 377 F.3d 232, 243-44 (2nd Cir. 2004) (inducement to travel in interstate commerce for fraudulent purpose) ("We therefore reject Thomas's argument that the foolishness of Pastor

Holmes's belief in Thomas's fraudulent scheme somehow eviscerates Thomas's fraudulent intent. We refuse to accept the notion that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim." (citations omitted)).

Given these principles, Defendant clearly cannot point to loose lending practices of the victim financial institutions to establish a defense to the charges of wire fraud or conspiracy to commit wire fraud and bank fraud. The government need not prove that the financial institutions relied on or were damaged by Defendant's misrepresentations, and Defendant therefore cannot establish a defense to the crimes by proving that the financial institutions did not rely or were not damaged. Thus, to the extent Defendant seeks to argue that he is not guilty of wire fraud or of conspiracy to commit wire fraud and bank fraud because the financial institutions did not rely on his false statements, the argument is inappropriate. Evidence offered to support this argument would be irrelevant and inadmissible.

These conclusions, however, do not fully resolve the issue presented by this motion. As noted, in order to determine the materiality of Defendant's allegedly false statements, the jury must consider whether they had a natural tendency to influence, or were capable of influencing, the decision of the decision-making body to which they were addressed – namely, the financial institutions who were asked to make the loans in this case. *See Neder*, 527 U.S. at 16. In order to decide whether the false statements had a natural tendency to influence, or were capable of influencing, the decisions of the lenders, the jury must know something about the lenders' decision-making process. For this reason, the government proposes to present expert witnesses who will testify about underwriting standards and the loan application process for residential mortgage lenders. As the government has stated in a brief for another motion in this case: "The United States intends to present evidence regarding lending standards to demonstrate that the misrepresentations in [Maximov's] loan applications were material to a lender's decision to fund a loan." Doc. 127 at 6. If the government is going to present evidence of

"lending standards" in order to demonstrate the materiality of the false statements, then Defendant surely must be permitted to challenge that evidence – to argue that the government's witnesses are not accurately describing "lending standards" – in order to rebut the government's proof of materiality. Stated differently, if the government seeks to show that Defendant's false statements about income were material because applicable lending standards required the financial institutions to consider income, Defendant certainly must be permitted to present evidence that the relevant lending standards did not require the financial institutions to consider income.

Thus, although Defendant cannot rely on loose lending practices of victim financial institutions as a defense to fraud, he can challenge the government's evidence concerning applicable lending standards and thereby challenge the government's assertion that the false statements were material. Drawing a line between evidence presented to establish an improper defense and evidence relevant to the question of materiality may not be easy in this case. Many of those lines will have to be drawn during the course of trial when the Court is more familiar with the evidence and arguments being made by the parties. The Court can conclude at this stage, however, that it should present an instruction to the jury on the relevancy of the lending standards evidence. Specifically, the Court will instruct the jury that loose lending practices do not constitute a defense to wire fraud or bank fraud, but that the lending standards applied by the financial institutions are relevant to the question of materiality – to the jury's determination of whether the false statements had a natural tendency to influence, or were capable of influencing, the decision of the financial institutions in this case. The Court can also conclude at this stage that if government witnesses testify to the existence of particular lending standards during the years in question, Defendant's counsel will be permitted to cross-examine the witnesses on those issues and to challenge their assertions concerning the lending standards that were applicable during the years in question. Some of this cross-examination may include questions about the allegedly loose lending

practices of particular lenders at issue in this case. The Court considers such cross-examination to be directly relevant to the question of materiality.

The Court finds these conclusions to be consistent with the case law it has reviewed. For example, in *Peterson*, the Ninth Circuit noted that a jury may look to how a lender would have dealt with particular representations in deciding whether those representations were material: "A reasonable juror could have concluded that the false statements in the Fisher Gift Letter were material because, had HUD known that the Petersons directly funded the down payment, HUD would not have insured the loan." 538 F.3d at 1073. Moreover, the test for materiality itself makes clear that materiality must be addressed in the context of the case at hand. A false statement is material if it has a natural tendency to influence, or is capable of influencing, "the decision *of the decisionmaking body to which it was addressed*." *Neder*, 527 U.S. at 16 (emphasis added). This standard clearly suggests that the jury must consider the decisionmaking body to which the false statement was addressed in deciding whether a misrepresentation is material. Defendant therefore will be permitted to cross-examine government witnesses, and perhaps to present evidence, concerning the decisionmaking bodies to which Defendant's false statements were addressed.

The Court cannot give further guidance without hearing the evidence at trial. The Court will, however, attempt to adhere to the principles set forth in this order in ruling on the evidence submitted during the course of the trial.

**IT IS ORDERED** that the government's Motion in Limine to Preclude Evidence or Argument of Financial Institutions' Fault (Doc. 55) is **granted** to the extent Defendant seeks to present evidence of loose lending practices as a defense to fraud, but **denied** to the extent Defendant seeks to present such evidence on the question of materiality. The Court will entertain appropriate limiting instructions from the parties.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on _____ for a total of \_\_\_\_ days.

Dated this 14th day of October, 2011.

_____
David G. Campbell
United States District Judge